PEOPLE *v.* NODINE

1. KIDNAPPING—INDICTMENT AND INFORMATION—SPECIFIC INTENT.

The failure to include in the information in a prosecution for kidnapping an allegation of specific intent, *i.e.,* intent either to cause such person to be secretly confined or imprisoned against his will or held to service against his will, did not cause the information to be infirm where the information charged that the defendant had feloniously, wilfully, maliciously, and without lawful authority forcibly confined and imprisoned another against that person's will, because the kidnapping statute makes it a felony to wilfully, maliciously, and without lawful authority confine forcibly *or* secretly confine or imprison another; there was no necessity to charge specific intent, because the defendant was charged with having confined another forcibly or secretly (MCLA § 750.349).

2. INDICTMENT AND INFORMATION—VARIANCE FROM COMPLAINT—APPRISAL OF CHARGE.

The defendant did not suffer any prejudice even though the language in the information returned to the circuit court differed from the language of the original complaint and warrant and from the language of the warrant and complaint as amended at the preliminary examination where all of these documents specifically and clearly apprised the defendant of what he was charged with.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—OBJECTION TO WORDING—INACCURATE TRANSCRIPT—ELECTRONIC EQUIPMENT.

The trial judge is obligated to require the court reporter to read back to him and both counsel the wording of the instruction to the jury as the reporter has taken it down and as it would

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Abduction and Kidnapping § 20 *et seq.*
[2] 41 Am Jur 2d, Indictments and Informations § 21 *et seq.*
[3, 4] 4 Am Jur 2d, Appeal and Error § 411 *et seq.*

be transcribed where a timely question has been raised as to the precise wording of the instruction as given and the court and counsel disagree as to that wording; if it appears that there is a disagreement between the reporter's notes and the instruction as the judge claimed it was given, even though back-up electronic equipment shows that the instruction given was proper, the instruction must be repeated to the jury either as agreed upon by the court and counsel or as the court determines that it should be given, thus preserving an unequivocal record for review.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—APPEAL AND ERROR— EQUIVOCAL RECORD.

An appellate court will not presume that the trial court did not erroneously instruct the jury as to the elements of the crime charged where the court reporter's notes of the instruction show a garbled, patently prejudicial and erroneous instruction, even though it is unlikely that the trial judge gave the instruction as the court reporter's notes show the instruction; under such circumstances, the case must be remanded for a new trial because of the possible prejudice to the defendant.

Appeal from Washtenaw, William F. Ager, Jr., J. Submitted Division 2 May 4, 1971, at Lansing. (Docket No. 9691.) Decided September 27, 1971.

James Nodine was convicted of kidnapping. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John B. Huss,* Assistant Prosecuting Attorney, for the people.

*Shirley J. Burgoyne,* for defendant on appeal.

Before: McGREGOR, P. J., and BRONSON and O'HARA,* JJ.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

O'HARA, J.   Defendant appeals on leave granted from his conviction of kidnapping.   MCLA § 750.349 (Stat Ann 1954 Rev § 28.581).

We recite the pertinent facts.

An Ann Arbor police officer, assigned to enforcement of the anti-narcotics laws, gained ingress to the apartment of a man named Smedley.   The officer earlier made a "buy" of hashish and "seco" pills from Smedley and a man named Taylor. Somewhere around midnight he left the apartment and went to pick up another officer with whom he apparently worked as a team.   The officers were undercover agents, not in uniform, and posing as narcotics purchasers.   They returned together and were again admitted to the apartment.   Upon entry they were confronted by Smedley holding a gun on them.   They were both forcibly searched.   A pistol and notebook were taken from one officer.   The other, who had previously made the "buy", was forced to return to his own apartment and recover the purchased narcotics.   During this interlude, his partner was held in the apartment at gun point. When he returned, and while both officers were being confined, the defendant arrived at the Smedley apartment.   He is alleged by the police to have participated in their restraint by holding them at bay at gun point with the weapon previously taken from one of the officers.

The defendant denies this.   While he admits he was present in the room where the officers were held, he claims never to have covered them with a gun.   He says he did see the officer's gun on a table. He admits he questioned the officers about the notebook which was taken from one of them, and of questioning them about their identity as "narcs", *i.e.,* anti-narcotics agents.   Later the officers were

released unharmed. Defendant was subsequently arrested. The complaint filed read:

"One James Nodine, did then and there wilfully, maliciously, and without lawful authority forcibly or secretly confine or imprison within this state a person, to-wit: Garry Lapides against his will, contrary to * * * ."

The defense made a motion to quash before the examining magistrate by reason of the fact that the complaint did not set forth a crime cognizable under the kidnapping statute. The complaint was amended to read:

"One James Nodine did then and there wilfully, maliciously and without lawful authority forcibly or secretly confine or imprison within the state a person, to-wit: Garry Lapides against his will, or did forcibly seize or confine or inveigle or kidnap such person with intent to extort money or other valuable thing thereby or with intent either to cause such person to be secretly confined or imprisoned in this state against his will or in any way held to service against his will contrary to * * * ."

The information filed against defendant used the language of the original complaint, to-wit:

"did then and there feloniously, wilfully, maliciously, and without lawful authority forcibly confine and imprison one Garry Lapides within this state against his will."

Defendant moved the circuit court to quash the information. The motion was denied. The motion was renewed during trial and in the motion for a new trial. In each instance the trial court held that the information was sufficient and was within the scope of the magistrate's return. The claimed infirmity is the failure to include an allegation of

specific intent, *i.e.,* "intent either to cause such person to be secretly confined  *  *  *  or imprisoned against his will  *  *  *  or  *  *  *  held to service against his will".

We think able defense counsel misreads the statute. The defendant was charged in the language of the statute which alternatively makes it a felony to wilfully, maliciously, and without lawful authority confine forcibly *or* secretly confine or imprison another. Defendant was charged with having confined another forcibly or secretly. The proofs might have substantiated either or both. The proofs were submitted to the jury. They were abundantly sufficient to create a jury issue. The jury convicted on those proofs. We find no reversible error. There was no necessity of charging specific intent under the section of the statute upon which the state proceeded.

Defendant's claims of error that the original complaint and warrant differed from the return to the circuit court, and from the language of the amended complaint and warrant, does not move us to reverse. All these documents specifically and clearly apprised the defendant of what he was charged with. No possible prejudice to him could have resulted.

We have examined the other claimed errors and we do not believe they merit decisional discussion. We note, however, that defense counsel most carefully raised every conceivable issue and briefed each issue ably and extensively.

We are concerned about one issue and it does merit full decisional discussion. After the charge to the jury was completed, in prompt compliance with the court rule, defense counsel objected to the instruction concerning the extent of proof necessary to establish the aiding and abetting in the offense of another so as to render the accused guilty as a principal.

The court reporter's transcript, it must be candidly admitted, gives a garbled version of the controlling law. It is as follows:

"The court instructs you that all who are present either actually or at the place of the crime, are either actually aiding, abetting, assisting, or advising its commission, or who are present for such purpose are now regarded as principals."

If the foregoing instructions were given in the above quoted language, it is so clearly erroneous and patently prejudicial as to require no discussion, much less citation of authority. Under it, literally read, any passerby at the scene of a crime would become a principal.

The learned trial judge addressed himself to this issue in his opinion on the motion for a new trial. We quote:

"In regard to paragraph 10 of defendant's motion, the court would state very emphatically that the transcript filed by the former court reporter is in error. The Washtenaw County Circuit Court has for many years had an Edison Voicewriter machine in the court at all times, so that all testimony could be recorded verbatim on the record of the Edison Voicewriter. Counsel for the defendant well knows that the court read the instructions regarding aiding and abetting directly from Gillespie starting at page 68 and at the bottom of page 69 and top of page 70. The court first read the statute as set forth in Gillespie at the top of page 68 in which it is stated, 'Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids or abets in its commission may hereafter be prosecuted, indicted, tried, and on conviction shall be punished as if he had directly committed such offense'. The court then went on to *read* the statement in Gil-

lespie starting with the last three words in the text on page 69 up to and including the first four lines of the text on page 70. This was read as follows: 'All who are present, either actually or constructively, at the place of the crime, and are either aiding, abetting, assisting or advising its commission, or who are present for such purpose, are now regarded as principals'. The transcript does not set forth what the court told the jury, and the court has the recording in its possession so that this can be played for the reviewing court so that they can hear what the court actually said to the jury. The court is of the opinion that this states the law of the State of Michigan and that the court committed no error in this instruction."

This is a very sensitive question. The ramifications of our answer could reverberate through every courtroom in our state which utilizes back-up electronic equipment during a trial. We approach it with care. We decline to pass in appellate review upon the relative accuracy of the stenographer's certified transcript and an electronic transcription. We deem it unwise, and we see no reason why it must be done. We adopt what we consider a salutary rule.

Where, as here, a timely question is raised as to the precise wording of an instruction as given, and the court and counsel disagree as to that wording, we hold it to be the obligation of the trial judge to require the court reporter to read back to him and to both counsel the wording of the charge as the reporter has taken it down and as it would be transcribed. If it appears that there is disagreement, the jury should be called in and the instruction repeated either as agreed upon by the court and counsel or as the court determines that it should be given, thus preserving an unequivocal record for

review.  We hardly deem it necessary to note that we think it highly unlikely that the trial judge worded the involved instruction as the reporter took it down and transcribed it.  We cannot, however, indulge in any presumption where so crucial an issue is at stake.  In conformity with the foregoing holding, we perforce reverse and remand for a new trial.

McGregor, J., concurred.

Bronson, J., concurred in the result only.