PEOPLE v McNEAL

Docket No. 81611. Submitted December 10, 1985, at Lansing. Decided June 16, 1986.

Don McNeal was convicted of kidnapping and attempted second-degree criminal sexual conduct following a jury trial in Genesee Circuit Court, Earl E. Borradaile, J., and was sentenced to concurrent prison terms of twenty-five to forty years on the kidnapping charge and three to five years on the criminal sexual conduct charge. At trial, testimony of the victim showed that the defendant approached the victim at a bus stop on a public street while she was waiting for a bus, forced the victim at knifepoint to go several blocks to a house, and, then, while in the house, kissed the victim on her neck and lips and rubbed her on her stomach and thighs. The victim thereafter prevailed upon defendant to let her go. At the close of the prosecution's proofs, defendant moved for a directed verdict as to each charge. The motions were denied. Defendant appealed. *Held:*

1. To the extent that the kidnapping charge was based upon forcible confinement, asportation having significance independent of the criminal sexual conduct charge had to be shown. The testimony of the moving of the victim from a public street to a private home was sufficient to establish the necessary asportation.

2. The testimony concerning the taking of the victim from a public street to a private home and then holding her at that location was sufficient to establish secret confinement.

3. The jury could have found beyond a reasonable doubt that defendant seized the victim with the intent to secretly confine her.

4. There was sufficient evidence to sustain a jury finding of

REFERENCES

Am Jur 2d, Abduction and Kidnapping §§ 1, 6, 11, 13, 14, 17, 21, 23, 32.

Am Jur 2d, Criminal Law §§ 158-160.

Necessity and sufficiency of showing, in kidnapping prosecution, that detention was with intent to "secretly" confine victim. 98 ALR3d 733.

See also the annotations in the ALR3d/4th Quick Index under Attempt to Commit Crime.

attempted criminal sexual assault in the second degree, since it is clear that the defendant had the necessary intent and his actions went beyond mere preparation.

5. While voluntary abandonment is an affirmative defense to an attempt charge, and under appropriate circumstances the question of voluntary abandonment may be the proper subject of a motion for a directed verdict, the trial court did not err in refusing to direct a verdict on the assault charge on the basis of voluntary abandonment, since there was sufficient evidence so that the jury could properly find that the victim's use of her wits constituted an unanticipated difficulty or unexpected resistance. Since defendant did not move for a new trial, the question of whether the jury's finding was against the great weight of the evidence was not preserved for appellate review.

6. The sentence imposed for the kidnapping did not shock the conscience of the Court of Appeals.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — SUFFICIENCY OF EVIDENCE — DIRECTED VERDICT OF ACQUITTAL — STANDARD OF REVIEW.

The standard for reviewing a defense motion for a directed verdict of acquittal based on insufficiency of the evidence in a criminal jury trial requires the trial court to view the evidence in a light most favorable to the prosecution and to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

2. KIDNAPPING — STATUTES — JUDICIAL CONSTRUCTION.

A person can be convicted of kidnapping if it is proven beyond a reasonable doubt that the person wilfully, maliciously, and without lawful authority, forcibly or secretly confined or imprisoned any other person within this state against his will, or forcibly carried or sent a person out of this state, or forcibly seized or confined, or inveigled or kidnapped any other person with intent to extort money or other valuable thing thereby or with intent to either cause the person to be secretly confined or imprisoned in this state against his will, or to cause the person to be in any way held to service against his will (MCL 750.349; MSA 28.581).

3. KIDNAPPING — ASPORTATION — FORCIBLE CONFINEMENT.

Asportation which is not merely incidental to some other crime must be shown where the accused is charged with kidnapping based upon forcible confinement.

4. Kidnapping — Asportation — Evidence — Sufficiency of Evidence.

Asportation sufficient to sustain a kidnapping conviction requires proof that the moving of the victim had significance independent from any accompanying offense; a course of movement of a victim may be found to be incidental to both a kidnapping and another offense.

5. Kidnapping — Asportation — Evidence — Sufficiency of Evidence.

Evidence that an accused seized a victim on a public street and then took the victim to a house several blocks away before making a sexual assault upon the victim is sufficient to permit a jury to find the asportation necessary to sustain a kidnapping conviction.

6. Kidnapping — Asportation — Secret Confinement.

Asportation need not be shown where a kidnapping charge is based upon secret confinement.

7. Kidnapping — Secret Confinement — Evidence.

Secret confinement for the purpose of establishing the crime of kidnapping is shown where the victim is forced off the public streets and into a private home, since the place and manner of confinement makes it unlikely that members of the public would know or learn of the victim's unwilling confinement within a reasonable period of time.

8. Criminal Law — Attempt.

The elements of a criminal attempt are (1) the specific intent to commit the crime attempted and (2) an overt act going beyond mere preparation towards the commission of the crime.

9. Criminal Law — Attempt — Defenses — Voluntary Abandonment.

Voluntary abandonment of efforts to commit a crime is an affirmative defense to a prosecution for criminal attempt.

10. Criminal Law — Attempt — Defenses — Abandonment.

Abandonment of efforts to commit a crime is not voluntary where the defendant failed to complete the attempted crime because of unanticipated difficulties, unexpected resistance, or circumstances which increased the probability of detention or apprehension, nor is the abandonment voluntary where the defendant failed to consummate the attempted offense after deciding to postpone the criminal conduct until another time or to substitute another victim or another but similar objective.

11. CRIMINAL LAW — DIRECTED VERDICT — AFFIRMATIVE DEFENSE.

A trial court may direct a verdict in a criminal prosecution if an affirmative defense is established by proofs presented by the prosecution.

12. APPEAL — VERDICTS — NEW TRIAL — PRESERVING QUESTION.

A claim that a jury verdict is against the weight of the evidence is not properly preserved for appellate review where the question was not first raised by a motion for a new trial.

13. CRIMINAL LAW — APPEAL — SENTENCING.

A criminal defendant may request review of the exercise of a trial court's exercise of discretion in imposing sentence, but relief will be granted only where it is found that the trial court abused its discretion to the extent that the sentence shocks the conscience of the appellate court.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Joseph J. Farah,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and HOOD, JJ.

T. M. BURNS, J. Defendant was convicted by a jury of attempted second-degree criminal sexual conduct, MCL 750.520c; MSA 28.788(3), MCL 750.92; MSA 28.287, and kidnapping, MCL 750.349; MSA 28.581. He was sentenced to twenty-five to forty years imprisonment for the kidnapping conviction and a concurrent three- to five-year term for the attempted CSC conviction, with credit for two hundred ninety-five days served. Defendant appeals as of right and we affirm.

Defendant argues that the evidence was insufficient to support either of his convictions or, alternatively, that the trial court erred in denying his motion for a directed verdict as to each charge.

Because defendant called no witnesses in this case, the standard of review and the analysis as to his sufficiency of the evidence claim will be identical to that applied to his claim of error in denial of his motion for the directed verdicts. The standard for reviewing sufficiency of the evidence questions was set forth in *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979), cert den 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980). In reviewing a claim that there was insufficient evidence to support a conviction, the reviewing court must consider the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. See also *People v Petrella,* 424 Mich 221; 380 NW2d 11 (1985).

The victim in this case was a sixteen-year-old girl who was walking to a bus stop where she would pick up a bus to her high school. She provided the only testimony regarding the incident leading to defendant's convictions. She testified that on the morning of the incident it was foggy and she was alone. A man, later identified as defendant, grabbed her by the neck and stuck a butcher knife to her side. He forced her to walk a couple of blocks and told her that he had a gun in his pocket. Shortly before the two arrived at defendant's intended destination, he wrapped a towel around her eyes and put his jacket hood on her. Minutes later, they arrived at a house which defendant unlocked with a key. Once inside, the victim asked defendant why he had grabbed her. His reply was that she was a black woman. At some point after they entered the house, the victim began to cry and defendant told her to shut up because "he hadn't had [her] pants down yet." Defendant then threw her on a couch. For the

next hour and a half, the victim and defendant talked. Defendant spoke of black women he had dated who had treated him badly. The victim tried to keep defendant talking.

After the talk, defendant laid himself down on the couch next to the victim and began kissing her on the lips and neck. He then rubbed her on the top part of her thighs and on the side of her stomach, but nowhere else. During the episode, the victim asked defendant several times to let her go. Once, he told her that she should finish her education. She replied that she had two tests to take at school that day and that he should let her go. He said that he did not know if he should, but she promised that, if he did, she would not tell anyone. Finally, he took the towel and hood off her and took her to the bathroom so that she could fix her hair. Then he walked her to the bus stop, waited with her, and told her that he was sorry and that he would never do it again.

I

We first consider whether there was sufficient evidence to support defendant's conviction on the kidnapping charge. The "kidnapping" statute, as it is known, describes various types of conduct which are made punishable by the statute. The Supreme Court in *People v Wesley,* 421 Mich 375, 383; 365 NW2d 692 (1984), clarified the kidnapping statute by dividing and summarizing the ways in which a person could be convicted of kidnapping. The Supreme Court stated:

Thus, a person can be convicted of kidnapping if it is proven beyond a reasonable doubt that he or she wilfully, maliciously and without lawful authority,

(a) *forcibly or secretly confined or imprisoned*

*any other person within this state against his will,
or*

(b) forcibly carried or sent such person out of
this state, *or*

(c) *forcibly seized or confined, or inveigled or
kidnapped any other person*

(1) with intent to extort money or other valuable
thing thereby, *or*

(2) *with intent* either

(A) *to cause such person to be secretly confined
or imprisoned in this state against his will,* or

(B) [to cause such person to be] in any way held
to service against his will. [Emphasis added.]

We are concerned in this case only with the forms
of conduct described by the Supreme Court in (a)
and (c)(2)(A), the portions emphasized above. Defendant was charged under the corresponding portions of the kidnapping statute.

As we see it, the statute is applicable in at least
three different aspects to the facts of this case.
Defendant could be convicted of kidnapping if the
evidence was sufficient to support a finding that he
wilfully, maliciously and without lawful authority,
(i) forcibly confined or imprisoned the victim (with
asportation), (ii) secretly confined or imprisoned
the victim, or (iii) forcibly seized or confined the
victim with intent to cause her to be secretly
confined or imprisoned. The Supreme Court has
indicated that asportation is required as an element of kidnapping if the charge is forcible confinement, but not if the charge is some other form
of kidnapping. *People v Wesley, supra; People v
Adams,* 389 Mich 222; 205 NW2d 415 (1973). The
statute was interpreted to require asportation in
that regard for various reasons. Among such reasons were the need to distinguish "true kidnapping" from the common-law misdemeanor of false
imprisonment and the need to distinguish actions

which are merely incidental to other crimes which involve some intentional confinement of the person of the victim, such as assault, battery, rape or robbery, from actions which would constitute "true kidnapping."

We find that there was sufficient evidence in this case to support defendant's conviction. First, the evidence was sufficient to support a finding of forcible confinement. The testimony showed movement of the victim from the bus stop to the home several blocks away. The question in this regard is whether the asportation of the victim was "merely incidental to an underlying crime." A jury could rationally find beyond a reasonable doubt that the movement was not "merely incidental" in this case. In *People v Adams, supra,* p 238, the Supreme Court indicated that, "[i]f the movement adds either a greater danger or threat thereof, that is a factor in considering whether the movement adequately constitutes the necessary legal asportation." When it is necessary to find asportation, it must be shown to be movement having significance independent of any accompanying offense. *People v Barker,* 411 Mich 291, 300; 307 NW2d 61 (1981). However, a course of movement may be incidental to *both* a kidnapping and another offense and can be of such quality and character as to supply the asportation element of kidnapping. *Id.* In this case, the testimony indicates that defendant abducted the victim and took her to a house. Such asportation is sufficient to support a kidnapping conviction. Defendant did not merely grab the victim, pull her aside, and otherwise confine her while he attempted a rape. The degree of movement and degree of confinement was much greater in this case. Defendant decided to move the victim to another location and into a house. The jury could rationally find that it

was proven beyond a reasonable doubt that defendant had "kidnapped" the victim under these circumstances.

Second, there was sufficient evidence for a jury to find that defendant secretly confined the victim. Where the charge is secret confinement, asportation is not an element of the offense. *Wesley, supra.* There is very little case law in Michigan to indicate what constitutes "secret confinement." Cf., *People v Lucille Walker,* 135 Mich App 311; 355 NW2d 385 (1984); *People v Nodine,* 36 Mich App 80; 193 NW2d 172 (1971). One thing is obvious. "Secret" confinement is to be distinguished from confinement in a public place such as a jail or a mental institution. However, not all confinement beyond such extremely public confinement constitutes secret confinement. See *Walker, supra.* In general, we believe that secret confinement is confinement in a place or manner which makes it unlikely that members of the public will know or learn of the victim's unwilling confinement within a reasonable period of time. Moreover, in order to establish secret "confinement" or "imprisonment," some significant type or amount of detention may be required. In this case, the evidence indicated that defendant forced the victim off the streets and into a home. He forced her to remain there for three hours and kept her blindfolded for most of that time. Under these circumstances, there is no question that a jury could rationally conclude that she was "confined" or "imprisoned." Moreover, a jury could rationally conclude that it was proven beyond a reasonable doubt that such confinement in the house was "secret." It obviously would be difficult for any other person to know or learn that an abducted victim had been taken and detained there.

Third, a jury could rationally find that it was

proven beyond a reasonable doubt that defendant seized the victim with the intent to cause her to be secretly confined. Defendant seized her at a bus stop and took her from there to the house. During that time, he gave no indication of an intent to commit a sexual assault. Even if he had intended to commit a sexual assault, he could also have possessed the requisite intent to cause her to be secretly confined. Defendant thereafter kept the victim in the house for approximately three hours during which time he never succeeded in raping her. Instead, he kept her there blindfolded and talked to her. A rational trier of fact could find, beyond a reasonable doubt, that when defendant seized the victim, he did so with the intent to cause her to be secretly confined and not simply with the intent to rape her.

II

We next address the question of whether there was sufficient evidence to support a conviction of attempted second-degree criminal sexual conduct. We find that there was sufficient evidence.

Defendant argues both that his actions did not amount to an attempt to commit the crime and, even if they did, that he voluntarily abandoned his criminal enterprise before consummating the offense attempted. We believe that the jury could rationally conclude that this was not so.

A

The attempt statute, MCL 750.92; MSA 28.287, provides punishment for any person "who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act toward the commission of such offense, but shall fail in the perpetration, or shall be intercepted or prevented in the execution of the same." The crime of at-

tempt consists of (1) the specific intent to commit a crime, and (2) an overt act going beyond mere preparation toward committing the crime. See *People v Coleman,* 350 Mich 268, 276; 86 NW2d 281 (1957), and *People v Bowen,* 10 Mich App 1, 7; 158 NW2d 794 (1968). See also *People v Adams,* 416 Mich 53, 58, n 5; 330 NW2d 634 (1982). In this case, defendant does not dispute that he had the specific intent to commit the crime, but, rather, he argues that his actions did not amount to an attempt. Indeed, defendant's intention to commit the crime can be inferred from his statement that he did not have the victim's pants down yet.

We find that the jury could rationally conclude beyond a reasonable doubt that defendant's conduct went beyond mere preparation and amounted to an attempt. The evidence indicated that defendant put the victim on the couch, laid himself down next to her, kissed her neck and lips, and touched her thighs and stomach. Because defendant never touched the victim's intimate parts, he could not have been convicted of the completed crime of second-degree criminal sexual conduct under MCL 750.520c; MSA 28.788(3). However, his actions obviously went beyond mere preparation and planning. His actions constituted direct movement toward the commission of the crime after preparations were made. Cf., *People v Coleman, supra.*

**B**

Defendant's second contention is that, even if his actions amounted to an attempt, he voluntarily abandoned it. This Court has recognized the defense of voluntary abandonment to a charge of attempt. In *People v Kimball,* 109 Mich App 273, 286-287; 311 NW2d 343 (1981), modified 412 Mich 890 (1981), after an indepth discussion and analysis of the issue, this Court stated:

[T]he issue presented is one of first impression in this state. We are persuaded by the trend of modern authority and hold that voluntary abandonment is an affirmative defense to a prosecution for criminal attempt. The burden is on the defendant to establish by a preponderance of the evidence that he or she has voluntarily and completely abandoned his or her criminal purpose. Abandonment is not "voluntary" when the defendant fails to complete the attempted crime because of unanticipated difficulties, unexpected resistance, or circumstances which increase the probability of detention or apprehension. Nor is the abandonment "voluntary" when the defendant fails to consummate the attempted offense after deciding to postpone the criminal conduct until another time or to substitute another victim or another but similar objective. Such a holding is not at odds with the terms of the statute, which refer to one who "fails," is "prevented," or is "intercepted" before completion of the attempted offense. Such language lends itself to a holding that voluntary abandonment is a defense.

We note that the question of whether an affirmative defense has been established is usually a question for the jury and any challenge in that regard goes to the weight and not the sufficiency of the evidence. As noted in *Kimball, supra,* voluntary abandonment does not negate any element of the crime of attempt, but actually takes place after a defendant has already taken action which legally constitutes an "attempt." Thus, in the usual case, the prosecutor need not initially present evidence regarding an abandonment or lack thereof. He merely proves his case. The defense is somewhat similar to the entrapment defense which is established by defendant's proof of conduct independent of that which establishes the elements of the crime. *People v D'Angelo,* 401 Mich 167, 182-183; 257 NW2d 655 (1977). Because

of this, one would normally expect that evidence of an abandonment defense would not be presented at trial until proofs are submitted by defendant. The prosecutor might thereafter present evidence in rebuttal and the jury would weigh the evidence and arrive at its conclusion.

In this case, however, defendant felt that the victim's testimony which was presented during the prosecutor's case in chief established his claim of abandonment. He moved for a directed verdict on this ground. We believe that the trial court properly declined to direct a verdict in defendant's favor.

A trial court may direct a verdict if an affirmative defense is established by proofs presented by the prosecution. In *Boudeman v Arnold,* 200 Mich 162, 164; 166 NW 985 (1918), the Supreme Court stated:

> Where the testimony is all one way, is uncontradicted by any testimony given in the case, either from a party's own witnesses, or the other party's witnesses, either on direct or drawn out on cross-examination, or by any facts or circumstances in the case, is not in itself in any way improbable or discredited, and but one legitimate inference may be drawn from it, and a case is thereby made for the plaintiff or a defense made for the defendant, the duty rests upon the court to direct a verdict.

See also *People v Jackson,* 390 Mich 621, 625, n 2; 212 NW2d 918 (1973). However, we do not believe that the victim's testimony made out a defense for defendant in this case. Based on her testimony, a fact-finder could legitimately infer that defendant abandoned his attempt in response to the victim's use of her wits in keeping defendant talking and in convincing him to let her go. While we find it to

be a close question, we hold that a victim's entreaties or pleadings may constitute "unanticipated difficulties" or "unexpected resistance" as those terms were used in *Kimball, supra.* Thus, the factfinder could conclude that the abandonment was not voluntary.

Because voluntary abandonment is an affirmative defense, no question regarding sufficiency of the evidence arises. To the exent that defendant's claim asserts that the jury verdict is against the weight of the evidence, he has failed to preserve the issue for appeal. An objection going to the weight of the evidence can be raised only by a motion for a new trial. *People v Powers,* 272 Mich 303, 310; 261 NW 543 (1935); *People v Strong,* 143 Mich App 442, 450; 372 NW2d 335 (1985); *People v Matthews,* 53 Mich App 232, 235; 218 NW2d 838 (1974); *People v Mattison,* 26 Mich App 453, 459; 182 NW2d 604 (1970).

III

Defendant's final issue on appeal is that the trial court abused its discretion in sentencing him to twenty-five to forty years in prison for the kidnapping conviction. Under *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), this Court may review a trial court's exercise of discretion in sentencing, but may afford relief to the defendant only if we find that the trial court, in imposing the sentence, abused its discretion to the extent that it shocks the conscience of this Court. Kidnapping is a serious offense and abduction of a teenager is utterly reprehensible conduct. Under the facts of this case, our conscience is not shocked by the sentence imposed.

Defendant's convictions and sentences are therefore affirmed.