PEOPLE v JOHNSON

Docket No. 97532. Submitted March 1, 1988, at Lansing. Decided October 3, 1988.

Lonnie R. Johnson was convicted, following a jury trial in the Saginaw Circuit Court, of kidnapping, two counts of first-degree criminal sexual conduct, extortion, and possession of a firearm during the commission of a felony. The trial court, Joseph R. McDonald, J., sentenced defendant to concurrent prison terms of twenty to forty years on the kidnapping, CSC and extortion convictions, and to a consecutive two-year term on the felony-firearm conviction. Defendant appealed alleging several errors.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion in allowing the victim to testify that defendant told her that going to jail did not bother him as he had already been in jail. The statement was not admitted merely to establish that defendant had a criminal record, but was relevant to the elements of coercion and the victim's mental anguish.

2. There was sufficient evidence to warrant the giving of a jury instruction on the use of evidence of the defendant's flight.

3. The trial court properly instructed the jury on kidnapping by secret confinement. Secret confinement does not require a showing that there are no witnesses to the crime. Secret confinement can be shown where those who know where the victim is located are unaware that the victim is, in fact, a victim of kidnapping.

Affirmed.

KELLY, J., dissented. He believes that the trial court erred in instructing the jury on kidnapping by secret confinement and that such error requires reversal. He does not believe that there was sufficient evidence by which the jury could find secret

REFERENCES

Am Jur 2d, Abduction and Kidnapping § 11 *et seq.*

Am Jur 2d, Evidence §§ 320 *et seq.,* 611.

Am Jur 2d, Trial §§ 573, 604.

Necessity and sufficiency of showing in kidnapping prosecution, to "secretly" confine victim. 98 ALR3d 733.

confinement beyond a reasonable doubt. He would reverse the kidnapping conviction and affirm the other convictions.

1. Evidence — Criminal Law — Prior Incarceration of Defendant.
    Admission of testimony by the victim of a crime that the defendant told her that going to jail did not bother him as he had already been in jail does not constitute error where the evidence was not admitted merely to establish that defendant had a criminal record and was relevant to aid the jury in determining whether the elements of the crime had been established.

2. Trial — Jury Instructions — Evidence.
    Jury instructions must be supported by the evidence admitted at trial.

3. Kidnapping — Secret Confinement.
    It is not an element of kidnapping by secret confinement that there be no witnesses to the crime; such crime can be shown where those who know where the victim is located are unaware that the victim is, in fact, a victim of kidnapping and where those who know of the confinement do not know where the victim is located; there is no secret confinement if others are aware that the victim is being held against his will and are aware of the location of the confinement, or could easily determine the location because of its public nature.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Christopher S. Boyd*, Prosecuting Attorney, and *Annette M. Grey*, Chief of Appeals, for the people.

State Appellate Defender (by *Fred E. Bell*), for defendant on appeal.

Before: Sawyer, P.J., and Kelly and J. J. Rashid,* JJ.

Sawyer, P.J. Defendant was convicted, following a jury trial, of kidnapping, MCL 750.349; MSA 28.581, two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(e); MSA 28.788(2)(1)(e),

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

extortion, MCL 750.213; MSA 28.410, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was thereafter sentenced to concurrent prison terms of twenty to forty years on the kidnapping, CSC and extortion convictions, and to a consecutive two-year term for the felony-firearm conviction. Defendant now appeals and we affirm.

Defendant's convictions arise out of a 1986 incident in which he forced the victim at gunpoint to accompany him on foot to his apartment. Once in the apartment, he forced the victim to engage in various sexual acts.

We turn first to defendant's argument that the trial court abused its discretion in allowing the victim to testify regarding defendant's prior incarceration. Specifically, the victim testified that, at one point during the incident, defendant told her that he would kill her or her family if she told anyone and that, in any event, going to jail did not bother him as he had already been in jail. The reason for defendant's prior incarceration was not revealed.

While we would agree with defendant that evidence of his prior incarceration would be inadmissible merely for the purpose of establishing the fact that he had a criminal record, we do not believe that the victim's testimony in the case at bar was inadmissible. The victim's statements were not admitted merely to establish that defendant had a criminal record, but were relevant to the elements of coercion and the victim's mental anguish. That is, the fact that the statements were made to the victim explains the victim's subsequent conduct and assisted the jury in determining whether the victim had suffered mental anguish. Thus, while defendant's prior incarceration was not directly relevant, his statement to the victim

that he had been incarcerated was relevant. See *People v Anglin,* 111 Mich App 268, 290-291; 314 NW2d 581 (1981).

We next turn to two of defendant's arguments concerning the instructions to the jury. First, defendant argues that the trial court erred in instructing the jury on the use of evidence of flight by reading CJI 4:4:01 which instructs the jury to determine if defendant did flee and, if so, whether he ran away because of consciousness of guilt. To give a particular instruction to a jury, it is necessary that there be evidence to support the giving of that instruction. See *People v Parks,* 57 Mich App 738, 743; 226 NW2d 710 (1975). In the case at bar, there was evidence that defendant left town for several days after learning that the police were looking for him in connection with the instant offenses. We believe that there was sufficient evidence to warrant the giving of the flight instruction, leaving it to the jury to determine if defendant did run away and whether his flight was indicative of guilt.

Defendant also assigns as error the trial court's instructing of the jury on kidnapping by secret confinement, utilizing CJI 19:1:04, rather than the more general instruction contained in CJI 19:1:01 which is appropriate where there is kidnapping by asportation. While we are at a loss to explain why the prosecutor chose to charge kidnapping by secret confinement rather that kidnapping by asportation, since the evidence that defendant forced the victim at gunpoint to travel approximately a mile and a half to his apartment would seem to satisfy the asportation element, we nevertheless believe that the trial court was correct in giving the kidnapping by secret confinement instruction, CJI 19:1:04.

On this issue, defendant argues that there was

no evidence that the victim's confinement was secret. We disagree.

This Court discussed the element of secret confinement in *People v McNeal,* 152 Mich App 404, 412; 393 NW2d 907 (1986):

> There is very little case law in Michigan to indicate what constitutes "secret confinement." Cf., *People v Lucille Walker,* 135 Mich App 311; 355 NW2d 385 (1984); *People v Nodine,* 36 Mich App 80; 193 NW2d 172 (1971). One thing is obvious. "Secret" confinement is to be distinguished from confinement in a public place such as a jail or a mental institution. However, not all confinement beyond such extremely public confinement constitutes secret confinement. See *Walker, supra.* In general, we believe that secret confinement is confinement in a place or manner which makes it unlikely that members of the public will know or learn of the victim's unwilling confinement within a reasonable period of time. Moreover, in order to establish secret "confinement" or "imprisonment," some significant type or amount of detention may be required. In this case, the evidence indicated that defendant forced the victim off the streets and into a home. He forced her to remain there for three hours and kept her blindfolded for most of that time. Under these circumstances, there is no question that a jury could rationally conclude that she was "confined" or "imprisoned." Moreover, a jury could rationally conclude that it was proven beyond a reasonable doubt that such confinement in the house was "secret." It obviously would be difficult for any other person to know or learn that an abducted victim had been taken and detained there.

Defendant argues that the confinement could not have been secret since at least one other person, defendant's neighbor, saw defendant take the victim into his apartment and because the victim and defendant were apparently acquainted

and, therefore, others searching for the victim could have traced her to defendant's apartment. We disagree with defendant's reasoning.

Firstly, with respect to the fact that defendant's neighbor was aware that defendant had taken the victim into his apartment, while this is true, there is no indication that the neighbor knew that the victim was being kidnapped. While the neighbor may have been aware that the victim was present in the apartment, the neighbor was not aware that she was being held against her will. We do not believe that an element of secret confinement is a showing that there are no witnesses to the crime. We believe that secret confinement can be shown where those who know where the victim is located are unaware that the victim is, in fact, a victim of kidnapping. As for the fact that persons acquainted with the victim, once they realized she was missing, might trace her presence to defendant's apartment, that might suggest that defendant made a poor choice in location to confine the victim, but we do not believe that it precludes a finding by the jury that the confinement was secret. Rather, we believe that the essential issue is whether other persons were aware that the victim was being confined at defendant's apartment. The evidence would seem to suggest that the answer to that inquiry was that no one was aware she was being confined at defendant's apartment. In fact, the evidence indicates that no one was aware that the victim was being confined at all. That is, it would appear that the victim was released before anyone was aware she was missing.

In sum, we believe that the essential difference between a case of secret confinement and a case where there is no secret confinement is that a person is being secretly confined if he is being held against his will at a location and there are no

third persons who are aware of the confinement or, even if aware, who know the location of the confinement; there is no secret confinement if others are aware that the person is being held against his will and are aware of the location of the confinement, or could easily determine the location because of its public nature. Thus, in a classic example, one cannot be secretly confined in the county jail. However, we believe that one could be secretly confined in the perpetrator's own home even though, once suspicion fell upon the perpetrator, one of the first logical places to look would be his home.

For the above reasons, we believe that the trial court correctly instructed the jury on kidnapping by secret confinement.

We have carefully considered defendant's remaining issues and determine that they require neither reversal nor discussion.

Affirmed.

J. J. RASHID, J., concurred.

KELLY, J. *(dissenting).* I disagree with the majority on three issues in this case: whether it was error requiring reversal for the prosecutor to present evidence in rebuttal which properly belonged in the prosecutor's case in chief; whether the trial court erred by instructing the jury on the flight instruction; and whether the court erred by instructing the jury on kidnapping by secret confinement. I will not discuss the first two issues as they are extremely close questions and dissents rarely ride to vindication. However, I am firmly convinced that the trial court erred by instructing the jury on kidnapping by secret confinement and that this error requires reversal.

The majority opinion observes that the prose-

cutor should have charged kidnapping by asportation but then goes on to find that there was sufficient evidence by which the jury could find secret confinement beyond a reasonable doubt. I believe that conclusion is demonstrably wrong. Compare *People v Lucille Walker,* 135 Mich App 311; 355 NW2d 385 (1984).

The victim testified that she was at a friend's house on the day of the crimes. The friend was defendant's sister. Defendant was present at the house as were defendant's girlfriend, his mother, his little sister, and another friend.

While there, defendant tried to get the victim's attention and eventually trapped her in the bathroom in order to talk to her. Defendant's girlfriend discovered them in the bathroom and a fight ensued. Defendant's mother arrived on the scene, pulled the victim out of the bathroom and told her to leave. The friend got the victim's coat and promised to meet her outside. Another brother followed the victim outside and offered to call a ride for her. The victim agreed and gave him a number but remained outside.

The victim then saw defendant come out of the house next door, later identified as his girlfriend's house, and beat on the door of his mother's home yelling something about his money. When he spotted the victim standing across the street, he told her to wait because she was going to go out with him. When he began banging on the house again, the victim started to leave. Defendant pulled out a gun and told her to wait. He crossed the street, pointed the gun at her and told her to walk with him. The victim described the long path they took through the streets of Saginaw, using a map to aid the jury. They publicly walked more than twenty blocks and passed many people. The victim explained that she did not scream or try to get away

because she was afraid. Defendant told her that he would kill her or her family if she told anyone and that jail did not bother him because he had been there before. She believed that he would not mind killing her.

The two finally arrived at defendant's apartment. Defendant placed a bar across the inside of the apartment door. In his apartment, defendant committed the acts of sexual misconduct for which he was convicted. Two to two-and-one-half hours passed. Defendant then permitted the victim to leave but instructed her to return on Monday for more sex and warned her again not to tell anyone. He also instructed her to wait while he dressed. He then accompanied her down the street for about two blocks before he let her go on by herself.

A neighbor who lived in the other apartment at defendant's address testified that she was home on March 8, 1986, and saw defendant arrive with a woman at about 8:00 P.M. The two were close enough to each other to be holding hands but the neighbor could not see if defendant had anything in his hand. She saw them walk to the back apartment. She also heard a loud male voice twice in the hour she estimated they were in the apartment, but she could not tell what was being said.

Count I of the information charged defendant with kidnapping, MCL 750.349; MSA 28.581. The charge read as follows:

> KIDNAPPING
> [Defendant] did wilfully, maliciously, and without lawful authority forcibly or secretly confine or imprison another person, to-wit: [the victim] within this state against his/her will with intent either to cause such person to be secretly confined or imprisoned in this state against his/her will, or in any way held to service against his/her will;

Contrary to Sec. 750.349 C.L. 1970, as amended; M.S.A. 28.581.

In *People v Wesley,* 421 Mich 375, 383; 365 NW2d 692 (1984), our Supreme Court interpreted the kidnapping statute to include several forms of kidnapping and stated:

> Thus, a person can be convicted of kidnapping if it is proven beyond a reasonable doubt that he or she wilfully, maliciously, and without lawful authority,
>
> (a) forcibly or secretly confined or imprisoned any other person within this state against his will, *or*
>
> (b) forcibly carried or sent such person out of this state, *or*
>
> (c) forcibly seized or confined, or inveigled or kidnapped any other person
>
> (1) with intent to extort money or other valuable thing thereby, *or*
>
> (2) with intent either
>
> (A) to cause such person to be secretly confined or imprisoned in this state against his will, or
>
> (B) [to cause such person to be] in any way held to service against his will.

In appropriate cases, secret confinement or some other nonmovement factor may supply a necessary alternative to asportation to complete the statutory kidnapping. *People v Adams,* 389 Mich 222, 238; 205 NW2d 415 (1973). In *People v McNeal,* 152 Mich App 404, 412-413; 393 NW2d 907 (1986), this Court held that there was sufficient evidence for a jury to find secret confinement where defendant forced the victim off the street and into a home. For three hours McNeal kept the victim there, most of the time blindfolded. The court believed that the confinement was "secret" in that

it would be difficult for anyone to know or learn that an abducted victim was confined there.

This case is distinguishable from *McNeal* because here defendant's apartment was known to his family and the victim had been seen recently with him. Moreover, the apartment was on the back side of a house which was occupied by a person who actually observed them enter. The apartment was constructed in such a way that sound traveled to the other apartment. The instant case did not involve any blindfolding or otherwise secreting of the location from the victim. Instead of being obviously difficult for anyone to learn or know that a victim had been abducted and secreted there, the victim's presence in defendant's apartment was known immediately by one person and immediately thereafter by others. Had a search been called for, defendant's apartment would have been a first priority.

Defendant objected to the proposed instruction on secret confinement and argued at trial that the more appropriate instruction would be CJI 19:1:01. I agree. There is no evidence showing intent to secretly confine the victim and thus CJI 19:1:04 was inappropriate. The major difference between the two instructions is that, where secret confinement is given, asportation outside of the criminal transportation of the victim for the underlying offense is unnecessary before the jury may find the defendant guilty on the charge of kidnapping. In the instant case, there was ample evidence by which the jury could have concluded that defendant forced the victim to travel more than was necessary to merely commit the rape, particularly since he followed her outside the apartment after the incident.

Because the trial court instructed the jury in such a fashion that they did not have to find

beyond a reasonable doubt the asportation element normally required in kidnapping cases, the jury was allowed to convict defendant without a necessary element of the charge of kidnapping. This error requires reversal of defendant's kidnapping conviction. This error did not affect defendant's trial on the other charges, so I would affirm his convictions for CSC, extortion, and possession of a firearm during the commission of a felony.