# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KELSEY DAVON DANIELS,

Defendant-Appellant.

UNPUBLISHED
March 22, 2016

No. 324565
Oakland Circuit Court
LC No. 2013-248298-FC

Before: SAAD, P.J., and SAWYER and HOEKSTRA, JJ.

PER CURIAM.

Defendant appeals from his convictions after a jury trial of felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. For the reasons provided below, we affirm.

## I. SUFFICIENCY OF THE EVIDENCE

This case arises from the shooting death of Rashone Johnson, which occurred in the city of Pontiac in the early morning hours of April 6, 2013. On appeal, defendant argues that the prosecution failed to present sufficient evidence for a rational jury to convict him of felony murder because there was insufficient evidence to show that he committed the necessary underlying felony of robbery. We disagree.

This Court reviews claims of insufficient evidence de novo. *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009). The evidence must be viewed in a light most favorable to the prosecution to "determine whether a rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt." *Id*. at 377-378. "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). Further, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

"The elements of first-degree felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of

the felonies specifically enumerated in [MCL 750.316(1)(b) . . . .]" *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007) (quotation marks and citations omitted). Robbery is one of the specific felonies enumerated in MCL 750.316(1)(b), and here, armed robbery served as the underlying felony for defendant's conviction of felony murder.

The elements of armed robbery are:

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7-8; 742 NW2d 610 (2007), citing CJI2d 18.1 (footnote omitted).]

Defendant's claim that his conviction cannot stand because "nothing was taken," and therefore no robbery occurred, is without merit. The felony murder statute specifically states that the murder need only have occurred during the "attempt to perpetrate" one of the enumerated felonies. MCL 750.316(1)(b). Moreover, under the Legislature's armed robbery statute, MCL 750.530, "a completed larceny is no longer necessary to sustain a conviction for the crime of robbery or armed robbery." *People v Williams*, 491 Mich 164, 166; 814 NW2d 270 (2012).

Defendant also claims that he could not have been convicted under an aiding and abetting theory. One who does not directly commit an offense, but "procures, counsels, aids, or abets in its commission," may be punished as if he directly committed the offense. MCL 767.39; see also *People v Robinson*, 475 Mich 1, 5-6; 715 NW2d 44 (2006).

To prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony. [*People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003), citing *People v Carines*, 460 Mich 750, 755; 597 NW2d 130 (1999).]

"A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet." *Robinson*, 475 Mich at 15.

The evidence supports the conclusion that defendant committed armed robbery as either a principal or an aider and abettor. Charona Williams testified that she texted Rickey Smith from Johnson's house and told Smith that she had a "lick" for him. Allante Thompson then drove Smith and defendant to Johnson's house. According to Williams, defendant had his hood tied around his head, and she gave Smith a white t-shirt to put over his face. She warned Smith that

Johnson might have a gun under a cushion in the house. Both Williams and Thompson testified that defendant and Smith then got out of the car and entered Johnson's house. Not a minute later, Williams heard gunshots,[1] and Smith and defendant came out of the house and back into the car. Later that morning, defendant and Smith told Thompson that they had gone into Johnson's house to rob him and that while there, they all got into a tussle and defendant fired one shot upwards toward Johnson's stomach or chest, and Smith fired two shots toward the ground. Thompson further testified that defendant told him that he used a 9-mm gun and Smith used a .45-caliber gun. Johnson ended up dying as a result of being shot multiple times.

From this evidence, the inescapable inference is that defendant and Smith both entered Johnson's house to steal money from him. Defendant attempted to conceal his identity before entering Johnson's home and admitted afterward that it was intention to rob Johnson. Further, defendant admitted that he had a 9-mm gun and fired it during the robbery attempt. Alternatively, at a minimum, the evidence supports the finding that defendant aided in the commission of the attempted robbery with knowledge at the time that Smith intended to rob Johnson.

Defendant also challenges the sufficiency of the evidence in support of his felony-murder conviction on the basis that he did not possess the requisite malice for felony murder. Malice may be inferred "from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Carines*, 460 Mich at 759.

Here, there was evidence that defendant entered Johnson's home with a 9-mm gun and fired it at Johnson. The fact that the shot missed during the struggle does not negate the intent that defendant had at the time. The jury was still free to infer that defendant had at the time an intent to kill or cause great bodily harm from his use of the firearm. See *id.* ("Malice may also be inferred from the use of a deadly weapon.").

Alternatively, the evidence was also sufficient for a rational jury to find that defendant had the requisite malice to be convicted of felony murder under an aiding and abetting theory. "[O]ne who aids and abets a felony murder must have the requisite malice to be convicted of felony murder, but need not have the same malice as the principal." *Robinson*, 475 Mich at 14. An aider and abettor has the requisite malice if that person "intended to kill, intended to cause great bodily harm, or wantonly and willfully disregarded the likelihood that the natural tendency of his behavior was to cause death or great bodily harm." *Riley*, 468 Mich at 140-141. Thus, like before, defendant's use of a firearm could allow the jury to infer the requisite malice. See *Carines*, 460 Mich at 759. Further, "[a] defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet." *Robinson*, 475 Mich at 15. A natural and probable consequence of armed robbery, the crime defendant either committed as a principal or aided and abetted, is death or great bodily harm. Thus, there was sufficient evidence that defendant "wantonly and willfully disregarded the likelihood that the natural tendency of his behavior was to cause death or great bodily harm."

---

[1] Thompson testified that he heard what sounded like a crash.

-3-

## II. STANDARD 4 BRIEF

Defendant raises several issues in his Standard 4 brief on appeal, each of which has no merit.

## A. JURY INSTRUCTIONS

Defendant argues that the trial court's instructions were constitutionally deficient. We disagree. At the outset, defendant has waived any review related to the jury instructions. After the jury was instructed, defense counsel expressed satisfaction with the instructions. This constitutes waiver, which extinguishes any error. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000); *People v Hershey*, 303 Mich App 330, 349; 844 NW2d 127 (2013). In any event, for the reasons provided herein, defendant's claims of instructional error are baseless.

Defendant avers that the court erred because it failed to provide the instruction provided in M Crim JI 2.19. This instruction provides that when there are multiple defendants "on trial together," the jury is to consider each of them separately and is to decide the case based on the evidence and the law that applies to each defendant. However, while there were other individuals who pleaded guilty related to the murder of Johnson, defendant was the sole defendant on trial. Thus, it would have been nonsensical and improper for the court to provide this instruction.

Defendant also claims that the jury should have been instructed on M Crim JI 8.5, which provides that mere presence, even with knowledge that an offense is about to be committed, is insufficient to make that person liable on an aiding and abetting theory. But in order to give a particular instruction to the jury, there must be evidence to support it. *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000); *People v Johnson*, 171 Mich App 801, 804; 430 NW2d 828 (1988). Here, the evidence shows that defendant was more than just a mere bystander. Instead, the evidence demonstrates that he wielded a gun, attempted to conceal his face with a hood, entered Johnson's home with Smith, and fired his gun toward Johnson. As a result, the evidence did not support providing M Crim 8.5 to the jury.

Defendant alleges that the jury should have been instructed on the lesser offense of voluntary manslaughter. "Voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation and before a reasonable time has passed for the blood to cool." *People v Hess*, 214 Mich App 33, 38; 543 NW2d 332 (1995). However, there was no evidence presented that purported to show that defendant was, at the time of the killing, acting "under the influence of passion or hot blood produced by adequate provocation." Rather, the evidence established that this was a planned robbery attempt. Thus, the jury was not entitled to be instructed on voluntary manslaughter. See *Canales*, 243 Mich App at 574; *Johnson*, 171 Mich App at 804.

## B. *BRADY*[2] VIOLATION

---

[2] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

Defendant argues that the prosecution violated his constitutional rights when it suppressed evidence that it had a duty to disclose. We disagree. Because defendant never raised this issue at the trial court, we review this unpreserved constitutional issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 764.

"A criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt about defendant's guilt." *People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005); see also *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). In order to establish such a due-process violation, a defendant must prove the following four elements:

> (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. [*Cox*, 268 Mich App at 448.]

Defendant asserts that the witness statements from three witnesses (Samone Brown, Jamya Abrams, and Danny Wallace) are implicated in this claim. However, notably, defendant never alleges that the prosecutor failed to disclose the statements from Brown and Abrams. Instead, defendant cursorily avers that the statements from them "directly contradict the testimony" of other witnesses because "they refute the assertions of his presence at Ricky Larkin's apartment." Thus, without any evidence that the prosecutor had possession of these statements and did not turn them over to defendant, defendant cannot establish plain error. Moreover, the statements did not materially help defendant. The statements merely provide that, according to these witnesses, defendant was not at Larkin's apartment between 10:00 p.m. and midnight on April 5, 2013. While there was some other testimony that defendant was at Larkin's apartment on April 5, the record demonstrates that the shooting happened after midnight, and defendant's admissions that took place at Larkin's apartment happened around 4:00 a.m. the following day. Consequently, had the evidence been disclosed, there is not a reasonable probability of a different outcome, and therefore defendant is not entitled to relief.[3]

The witness statement of Wallace also was not helpful to defendant. While defendant does allege that this statement was not provided by the prosecution, there is nothing in the record to support this assertion.[4] Additionally, the materiality of the statement is dubious. In the

---

[3] Indeed, the jury *was* presented with this information. Larkin testified that, while Brown and Abrams were present, defendant was not at the apartment on the evening of April 5.

[4] Notably, defendant provided copies of the police reports that contained the statements by Brown, Abrams, and Wallace. Defendant does not explain how he came into possession of them if the prosecutor did not initially provide these statements. Indeed, the prosecution provided a proof of service that indicates that it provided discovery materials to defendant, which included "police narrative reports."

statement, Wallace says that on the night of the shooting, he heard a knock on his front door, and after opening it, saw the victim Johnson, who said "I've been shot." Defendant asserts that this is exculpatory because Johnson did not provide any names of the shooters or alternatively claim that he was shot during a robbery. Defendant's position is devoid of any merit or logic on its face. Obviously, someone shot Johnson. The fact that he did not describe the circumstances of the shooting during his final breaths to his neighbor is no reason to think that defendant or anyone else did not perform the crime. Hence, the evidence did not have any exculpatory value, and any *Brady* claim necessarily fails.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he received ineffective assistance of counsel based on the alleged failures to conduct a thorough investigation and to present an adequate defense. We disagree.

> Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. The trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. [*People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (citations and quotation marks omitted).]

Because no evidentiary hearing was held, this Court's review is limited to mistakes apparent on the record. *People v Williams*, 223 Mich App 409, 414; 566 NW2d 649 (1997).

In order to succeed on an ineffective assistance of counsel claim, a "defendant must prove that his trial counsel failed to meet an objective standard of reasonableness based on prevailing professional norms. Second, defendant must establish prejudice, which is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014).

Defendant claims that counsel's performance was constitutionally deficient because he failed to investigate and call defendant's mother as a witness, who supposedly would attest that defendant was with her until at least 10:30 p.m. on April 5, 2013. But who to call as a witness is a matter of trial strategy, which we will not second guess. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). At the outset, with no evidentiary hearing, there is nothing on the record that indicates how defendant's mother would have testified at trial. Accordingly, his claim of ineffective assistance fails for the failure to establish the necessary factual predicate. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Moreover, as noted above, the murder did not occur until after midnight, so even if the jury was presented with the "fact" that defendant was with his mother until 10:30 p.m., there was not a reasonable probability that there would have been a different outcome, given defendant's admissions and the damning testimony from Thompson and Williams.

Defendant also claims that his trial counsel was constitutionally deficient by not interviewing Smith. However, there is nothing on the record to indicate that counsel did not attempt to interview Smith. Furthermore, in Smith's affidavit that defendant produced on appeal,

Smith simply avers that defendant was not with Smith at any time on April 5, 2013. Again, the crimes with which defendant was convicted occurred on April 6, 2013. Smith, who pleaded guilty to his role in the murder, omitted any reference in his affidavit to being with defendant on April 6, which was the critical time period, and the jury surely would have viewed this as a glaring omission. In brief, if counsel had produced Smith for trial and Smith only testified, consistent with his affidavit, then there would not have been a reasonable probability that the jury's verdict would have been different. Thus, any claims of ineffective counsel based on the failure to investigate and/or call Smith as a witness necessarily fails.

Defendant also argues that his trial counsel was ineffective because he failed to present an adequate defense. Defendant states that counsel failed to challenge the prosecutor's case by failing "to attack [the] necessary elements of the offenses charged" and failing to assert that defendant was not present at the crime. To the extent that this claim is based on counsel's failure to produce Brown, Abrams, Wallace, and Smith as witnesses, the claim fails for the reasons provided previously. Additionally, to the extent that the claim is based on counsel's general failure "to attack [the] necessary elements of the offenses," defendant provides no further argument on what counsel either did inappropriately or should have done. Accordingly, the issue is abandoned for defendant's failure to properly brief the issue. See *People v Mackle*, 241 Mich App 583, 604 n 4; 617 NW2d 339 (2000) ("A party may not merely state a position and then leave it to this Court to discover and rationalize the basis for the claim.").

Affirmed.


/s/ Henry William Saad
/s/ David H. Sawyer
/s/ Joel P. Hoekstra