# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

STEVE ARLAN BONNO,

      Defendant-Appellant.

UNPUBLISHED
February 1, 2018

No. 335830
Chippewa Circuit Court
LC No. 15-001916-FC

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant was convicted after a jury trial of first-degree premeditated murder, MCL 750.316(1)(a), and was sentenced as a fourth-offense habitual offender, MCL 769.12, to life imprisonment. Defendant appeals as of right, and we affirm.

## I. FACTS

Defendant's conviction arises from the stabbing death of Greg Sliger that occurred in Sault Ste. Marie, Michigan, on July 31, 2015. Defendant and Sliger lived in the same apartment building and were acquainted with each other. On the evening of July 30, 2015, Sliger and other residents were socializing outside the apartment building. Defendant was also sitting outdoors near the apartment building. According to defendant, Sliger intentionally provoked an argument with defendant by loudly insulting a woman with whom defendant was friends. He testified that Sliger then moved aggressively over to where he was sitting and began yelling insults in his face, and that he retaliated by shoving Sliger. During the argument, defendant's cat slipped from its leash and ran away. According to witnesses, defendant yelled at Sliger that if defendant were unable to find the cat that evening, he would "f***ing kill" Sliger. Witnesses later saw defendant in the woods with a flashlight, apparently searching for the cat. According to a witness, when defendant again walked past the group of people who had been socializing with Sliger, defendant threatened the group with retaliation if he could not find the cat. Another witness testified that the next afternoon, defendant told him that if he did not get his cat back, he and Sliger "would have problems."

Other residents of the apartment building testified that on the following evening, they heard a disturbance in the second floor lobby of the building. Upon investigation, they saw that the lobby furniture had been overturned and heard sounds of a fight. One witness testified that he heard Sliger call for help. Another witness testified that when he went to the lobby to

-1-

investigate, he saw defendant on top of Sliger stabbing Sliger with a knife. Another witness testified that she went to the lobby to investigate the noise and saw defendant stabbing a man who was on his hands and knees. Yet another resident testified that he, too, heard the fight and went to the lobby where he saw defendant standing over Sliger's body holding a knife. Sliger died as the result of 44 stab wounds.

Defendant admitted that he had an argument with Sliger on the evening of July 30, 2015, outside the apartment building, but testified that he did not threaten Sliger. Defendant testified that after the argument, he spent that night and the next day looking for his cat. Eventually, he returned to the apartment building and tried to use the stairs, but encountered Sliger, who blocked his entry to the stairs. According to defendant, he and Sliger then struggled and fought. During the fight, defendant pulled his knife from his pocket and stabbed Sliger. Defendant testified that the encounter had been a chance encounter and he had not planned to stab Sliger. Defendant denied ever threatening to kill the victim, or that he approached Sliger on July 31, 2015, with the intention of stabbing him.

At the conclusion of the evidence, the trial court instructed the jury on first-degree premeditated murder, as well as on second-degree murder. The jury returned a verdict for first-degree premeditated murder. This appeal followed.

## II. TESTIMONY OF POST-MIRANDA SILENCE

Defendant first contends that the trial court plainly erred by permitting a police detective to testify on direct examination that defendant asserted his right to silence after being given Miranda warnings.[1] Defendant did not object below to the testimony in question; this issue therefore is unpreserved. An unpreserved claim of constitutional error is reviewed by this Court for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 761-764; 597 NW2d 130 (1999). To demonstrate plain error, a defendant must demonstrate that (1) an error occurred, (2) the error was plain, meaning clear or obvious, and that (3) the error affected substantial rights, requiring a showing of prejudice or that the error affected the outcome of the lower court proceedings. *Id*. at 763. But even when an error affects substantial rights, reversal is warranted only if the unpreserved error resulted in the conviction of an actually innocent defendant, or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*. at 763-764.

The relevant testimony elicited by the prosecution in their case-in-chief reads:

> *Q*. You did read him his Miranda Rights?
>
> *A*. Yes.
>
> *Q*. And did he waive those rights and speak to you?
>
> *A*. He did not. He, he wanted to invoke his rights for a lawyer.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

It was prosecutorial misconduct to elicit this testimony, and its admission was plain error. We are unaware of any case that has held that a defendant's post-arrest silence may be introduced as substantive evidence, and it is difficult to understand how the prosecution could have concluded that such questioning was proper. As we stated in *People v Gallon*, 121 Mich App 183, 186-187; 328 NW2d 615 (1983), "Michigan courts have repeatedly held that silence of an accused in the face of police questioning may not be used against the accused at trial, subject to the exception that evidence of a refusal to speak during police questioning is admissible to contradict assertions that a statement was made." See also *People v Cary*, 494 Mich 260, 271; 833 NW2d 308 (2013); *Wainwright v Greenfield*, 474 US 284, 291; 106 S Ct 634; 88 L Ed 2d 623 (1986).

Despite the constitutional dimension of the error, under *Carines*, 460 Mich at 763-764, it does not require reversal unless the defendant is actually innocent or the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" (quotation marks and citation omitted). We conclude that the error in this case does not rise to the level so as to implicate either of these concerns. The first concern is readily addressed because the evidence of defendant's guilt was overwhelming.[2] Whether the second concern mandates reversal is more difficult. Such questioning is highly improper. However, because the reference was very brief, did not lead to further related inquiry, and was not referenced in the prosecution's closing arguments, we conclude that reversal is not mandated.[3]

---

[2] Defendant admitted that he argued with Sliger on July 30, 2015, then stabbed and killed Sliger the next evening. Other witnesses testified that they had heard defendant threaten to kill Sliger. Defendant admitted that when Sliger blocked his entrance to the stairs that evening, he pulled out his knife, unfolded it, and fought with Sliger. He admitted that he stabbed Sliger repeatedly, and the forensic evidence indicated that Sliger had been stabbed 44 times.

[3] We caution the prosecution not to repeat this error in other cases. As we stated in *People v Swan*, 56 Mich App 22, 35; 223 NW2d 346 (1974):

> In finding the error harmless in this case, we wish to emphasize that we do not condone conduct which directly or indirectly restricts or penalizes the exercise of the constitutional right to remain silent in the face of accusation. . . . We will find it difficult in the future to believe that prosecutors and police are ignorant of the well-established principle of law which forbids comment upon an accused's silence or that clear violations of the principle arise from inadvertence. Deliberate violations of this rule may lead us to reverse convictions even where evidence might be overwhelming. The prosecutor who comments, or elicits comment, on a defendant's silence thus risks the loss of a perfectly good case for no reason.

### III.  PRIOR BAD ACTS

Defendant next contends that the trial court erred warranting reversal by permitting testimony that defendant had stabbed another victim in 2002, and that the introduction of the evidence violated his right to due process.  We disagree.

At trial, the prosecutor presented a witness who testified that, in 2002, as a patrol sergeant with the Sault Ste. Marie City Police, he arrested defendant in connection with a stabbing incident.  According to the witness, defendant admitted that he stabbed that victim as the victim walked toward a residence, and explained that the victim had long been bothering him.  The witness added that defendant had used a folding knife in the attack.  The trial court thereafter instructed the jury on the limited use of that evidence, stating:

> You've heard evidence that was introduced to show that the defendant committed other crimes or improper acts for which he is not on trial.  If you believe this evidence you must be careful only to consider it for certain purposes.  You may only think about whether this evidence tends to show that the defendant acted purposely.

> That is, not by accident or mistake because he misjudged the situation.  That the defendant used a plan, system or characteristic scheme that he used before or since.  You must not consider this evidence for any other purpose.  For example you must not decide that it shows that the defendant is a bad person or that he is likely to commit crimes.

> You must not convict the defendant here because you think he is guilty of other bad conduct. . . .

Defendant argues that this testimony was minimally probative and seriously prejudicial, and thus denied him a fair trial.  We generally review a trial court's decision whether to admit evidence of other bad acts for an abuse of discretion.  *People v Kahley*, 277 Mich App 182, 184; 744 NW2d 194 (2008).  However, as defendant admits, there was no objection below to the challenged testimony, so our review is limited to plain error affecting defendant's substantial rights.  *Carines*, 460 Mich at 763.

MRE 404(b)(1) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Such evidence may be admissible, however, for another purpose such as to prove "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . ." *Id*.  For other-acts evidence to be admissible, (1) the evidence must be offered for a proper purpose, which is any purpose other than to show that the defendant acted in conformity therewith, (2) the evidence must be relevant under MRE 402 to an issue that is of consequence at trial, and (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice.  *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004).  Whether other-acts evidence is more probative than prejudicial is generally left to the determination of the trial court.  *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005).

In this case, the prosecution was endeavoring to prove premeditation, and so offered the evidence of an earlier stabbing to show defendant's plan or scheme in surprising a man with whom he had an antagonistic relationship with a knife attack. The evidence of the earlier stabbing was thus offered for a proper purpose, and was probative of whether defendant acted with premeditation when he stabbed the victim. The trial court's limiting instruction should have prevented unfair prejudice in the form of finding defendant guilty on the grounds that he was a bad person or otherwise merely inclined to commit crimes. We therefore conclude that the challenged evidence was not likely outcome determinative, nor did it affect defendant's substantial rights.

## IV. MANSLAUGHTER INSTRUCTION

Defendant next contends that the trial court denied him a fair trial by failing to instruct the jury on voluntary manslaughter. Defendant concedes that he did not request a jury instruction on voluntary manslaughter at trial, leaving this issue unpreserved. Unpreserved claims of instructional error are reviewed for plain error affecting substantial rights. *People v Knapp*, 244 Mich App 361, 375; 642 NW2d 227 (2001).

A criminal defendant has a right to have his or her case decided by a properly instructed jury. See *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000). Instructions must cover each element of each offense charged, along with all material issues, defenses, and theories that have evidentiary support. *People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994). An instruction should not be given, however, without evidentiary support. *People v Johnson*, 171 Mich App 801, 804; 430 NW2d 828 (1988).

An instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it. *People v Nickens*, 470 Mich 622, 626; 685 NW2d 657 (2004). Manslaughter is a necessarily included lesser offense of murder. *People v Mendoza*, 468 Mich 527, 533; 664 NW2d 685 (2003). When a defendant is charged with murder, the trial court is obligated to give an instruction for voluntary and involuntary manslaughter if supported by a rational view of the evidence. *People v Gillis*, 474 Mich 105, 137; 712 NW2d 419 (2006).

The element distinguishing murder from manslaughter is malice. *People v Holtschlag*, 471 Mich 1, 21; 684 NW2d 730 (2004). Malice is defined as "an act done with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Gillis*, 474 Mich at 138. In contrast, "to show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Mendoza*, 468 Mich at 535. Here, defendant would only have been entitled to an instruction on manslaughter if a rational view of the evidence would have supported a finding that Sliger's death was caused by a lesser mens rea than malice. See *Gillis*, 474 Mich at 138.

Defendant argues that his actions "were the product of the heat of passion that got out of hand." But the evidence overwhelmingly supported a finding that defendant acted either with an

-5-

intent to kill, to commit great bodily harm, or to create a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result. Defendant argued with Sliger the day before the attack. Witnesses testified that during that argument, defendant threatened to kill Sliger. Another witness testified that on the day of the attack, defendant stated that if he did not find his cat, he and Sliger "would have problems." Although defendant testified that at the time of the attack, he had only coincidentally encountered Sliger near the stairway in the apartment building and that Sliger blocked his access to the stairs, he nonetheless was armed and, when he and Sliger began to fight, he pulled out his knife, unfolded it, and stabbed Sliger repeatedly.

Moreover, the trial court instructed the jury on second-degree murder as a lesser offense of first-degree murder. That the jury was convinced that defendant acted with premeditation and deliberation, and thus rejected a verdict of second-degree murder with its lesser, general-intent requirement, logically eliminates the possibility that the jury would have decided upon the still-lesser intent required for voluntary manslaughter had that offense been among the jury's choices. See *People v Wilson*, 265 Mich App 386, 396; 695 NW2d 351 (2005) (failure to instruct on a lesser offense is harmless if the jury had a choice to convict on another intermediate charge and yet convicted on the greater offense). For these reasons, the trial court did not plainly err in declining sua sponte to provide an instruction on voluntary manslaughter, and the lack of any such instruction was not outcome determinative.

## V. ASSISTANCE OF COUNSEL

Defendant lastly contends that his trial attorney was ineffective for failing to raise at trial the three issues discussed above. We disagree.

Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to the effective assistance of counsel. *People v Kammeraad*, 307 Mich App 98, 122; 858 NW2d 490 (2014), citing US Const, Am VI; Const 1963, art 1, § 20. In general, to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and that (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). The defendant bears the burden of establishing the factual basis of the ineffective assistance claim, and must overcome a strong presumption that counsel's tactics were a matter of sound trial strategy. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Futher, in reviewing a claim of ineffective assistance of counsel, we presume that defense counsel rendered effective assistance and exercised reasonable professional judgment in all significant decisions. *Vaughn*, 491 Mich at 670.

In this case, defense counsel could well have objected to the detective's testimony that after being advised of his *Miranda* rights, defendant demanded a lawyer, and likely the objection would have been sustained, and a curative instruction given. But those actions would necessarily have drawn attention to the improper testimony. By declining to object to the testimony, the mention of defendant's exercise of his *Miranda* rights was neither repeated nor referenced in argument. A criminal defendant is entitled to a fair trial, not necessarily a perfect one. *People v*

*Mosko*, 441 Mich 496, 503; 495 NW2d 534 (1992). Defendant has not overcome the strong presumption that the lack of an objection on counsel's part was sound trial strategy.

With regard to the testimony that defendant had committed an earlier stabbing, this testimony was relevant and offered for a proper purpose. Further, in light of the trial court's limiting instruction, its probative value was not substantially outweighed by the risk of unfair prejudice, and an objection to that evidence likely would have been unsuccessful. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Further, defense counsel plausibly attempted to make capital out of that evidence during closing argument:

> He's an officer from 2002. . . . Why did the prosecutor bring that officer in? The reason is . . . he doesn't have anything to show that it was premeditated other than something that my client did fourteen years ago. I know I'm not the same person I was fourteen years ago. None of us are.

Defense counsel thus characterized the production of that witness as revealing a weakness in the prosecution's theory of premeditation, and also offered good reason to doubt that defendant engaged in the conduct at issue with precisely the same frame of mind that attended the earlier incident. It was arguably sound strategy for counsel to use the testimony to attempt to expose weakness in the prosecution's case.

Finally, as discussed, the evidence did not reasonably comport with a theory of voluntary manslaughter. Accordingly, the lack of such a request cannot support a claim of ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201. Further, defendant's argument that counsel should have elicited testimony regarding defendant's emotional state at the time of the stabbing, in order to create an evidentiary basis for a manslaughter instruction, is not persuasive. Counsel did elicit defendant's testimony that he stabbed the victim while "mad because . . . there's history," including that the victim "blacklisted me and I never bothered him." Defendant fails to explain, or show by offer of proof, what additional "emotional state" testimony counsel could have elicited.

Affirmed.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola